FILED
JUL 09 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| Plaintiff, | ) | 3:25cr338 |
| v. | ) | JUDGE HELMICK |
| MIT JITENDRAKUMAR PATEL, MIGNESHBHAI LAVJIBHAI CHIKHALIYA, AMANKUMAR KUSHWAHA, KETANKUMAR KANUBHAI PATEL, VRAJ BHARATBHAI PATEL, | ) | CASE NO. MAGISTRATE JUDGE C<br>Title 18, United States Code, Sections, 1956(a)(1)(A)(i), (a)(1)(B)(i), (h), 922(g)(5)(A), 924(a)(8), and 2 |
| Defendants. | ) | |

COUNT 1
(Money Laundering Conspiracy, 18 U.S.C. § 1956(h))

The Grand Jury charges:

1. From in or around March of 2023 to in or around June of 2025, in the Northern District of Ohio, Western Division, and elsewhere, Defendants MIT JITENDRAKUMAR PATEL, MIGNESHBHAI LAVJIBHAI CHIKHALIYA, AMANKUMAR KUSHWAHA, KETANKUMAR KANUBHAI PATEL, and VRAJ BHARATBHAI PATEL, together with others known and unknown to the Grand Jury, knowingly and intentionally combined, conspired, and agreed with each other and others known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

a) to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of

ORIGINAL

a specified unlawful activity, that is Wire Fraud, in violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

b) to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is: Wire Fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the transactions represented the proceeds of some unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United State Code, Section 1956(a)(1)(B)(i).

<u>Background</u>

2. A "phantom hacker scam" (PHS) is a type of fraud wherein a person posing as a customer service employee at a company or bank contacts a victim (typically, elderly) and falsely claims the victim's account has been compromised. The purported customer service employee then refers the victim, directly or indirectly, to a person posing as a law enforcement agent or corporate investigator. The purported law enforcement agent or investigator informs the victim that they must move their funds to a third-party or government account to keep their funds

safe from the supposed hackers, or to pay back a supposed debt. The purported law enforcement agent or investigator then coordinates the transfer of the victim's funds to other PHS participants without the victim's knowledge or consent.

3. In one common PHS scheme, elderly victims are contacted by a person claiming to work at PayPal Holdings, Inc. The purported PayPal employee informs the victim that unauthorized transactions have occurred on an account associated to the victim, and then forwards the victim to a person claiming to be a security investigator or a Federal Bureau of Investigation (FBI) Special Agent. After the agent or investigator establishes apparent credibility, the victim will be instructed to download software that, unknown to the victim, provides the scheme members with remote control of the victim's computer. The scheme members will then manipulate the victim's online financial accounts to make it appear that the victim has received or taken funds from PayPal or an associated bank such as JPMorgan Chase and needs to pay those funds back. In fact, no money has changed hands. After deceiving the victim, the purported agent or investigator then instructs the victim to drop off their true savings in the form of cash or gold to another supposed law enforcement officer or investigator to settle the supposed debt, at which point the money is laundered and distributed to scheme members. In order to keep the victim from reporting the crime, and to encourage the victim to transfer additional funds in the future, the victim is continuously provided with updates regarding the investigation and instructed not to tell anyone about the interactions, including family, friends, and true law enforcement.

Manner and Means of the Conspiracy

4. The Defendants, MIT JITENDRAKUMAR PATEL, MIGNESHBHAI LAVJIBHAI CHIKHALIYA, AMANKUMAR KUSHWAHA, KETANKUMAR KANUBHAI

PATEL, and VRAJ BHARATBHAI PATEL (collectively, "Defendants"), were citizens of India present in the United States. Defendants served as money launderers for other Indian conspirators throughout the world who participated in PHS schemes targeted at elderly individuals across the United States. Defendants provided United States-based money laundering infrastructure that allowed funds unlawfully obtained through PHS schemes based in India to be received and distributed throughout the world. The total amount of money laundered by Defendants is estimated to be at least in the tens of millions of dollars.

5. Defendants and other co-conspirators communicated with one another through in-person meetings, mobile application messaging, social media services, and other means in order to coordinate their activities and work together to launder funds obtained through PHS schemes.

6. Defendants, falsely acting as law enforcement agents and security officers, physically traveled throughout the United States, or directed others to do so, to pick up cash and gold from the victims at their homes or nearby parking lots. In fact, Defendants were not law enforcement officers or security investigators.

7. After obtaining the gold or cash, Defendants drove away from the victims. Once hidden from sight from the victims, Defendants reported the contents of the gold or cash packages to each other and other coconspirators. Defendants then physically delivered or coordinated the delivery of the gold or cash to other coconspirators for further laundering, and to enable transfers to coconspirators both domestic and abroad. By doing so, Defendants attempted to conceal, and did conceal, the source of the funds obtained illegally through the PHS schemes.

<u>Acts in Furtherance of the Conspiracy</u>

8. In furtherance of the above conspiracy, and to effect its objects and conceal the existence thereof, Defendants and others performed acts in the Northern District of Ohio,

Southern District of Ohio, Eastern District of Michigan, Northern District of California, Southern District of Mississippi, Middle District of Georgia, Eastern District of Tennessee, Middle District of Florida, Western District of Virginia, Southern District of Florida, Western District of New York, and elsewhere, including, but not limited to, the following:

a) On or about May 31, 2024, VRAJ BHARATBHAI PATEL (hereinafter, "V. PATEL") sent Victim 1's address in Orrville, Ohio, to MIT JITENDRAKUMAR PATEL (hereinafter, "M. PATEL").

b) On or about May 31, 2024, M. PATEL picked up $24,700 in cash from Victim 1 at Victim 1's residence in Orrville and sent proof of the funds to V. PATEL.

c) On or about June 4, 2024, M. PATEL picked up $64,000 in cash from Victim 2 of Van Buren Township, Michigan. After the pickup, M. PATEL sent videos of M. PATEL counting the proceeds to V. PATEL and MIGNESHBHAI LAVJIBHAI CHIKHALIYA (hereinafter, "CHIKHALIYA").

d) On or about June 5, 2024, CHIKHALIYA sent Victim 3's address in Westland, Michigan, to M. PATEL.

e) On or about June 5, 2024, M. PATEL caused Victim 3 to provide an envelope containing $15,000 in cash to scheme participants in Westland, Michigan. Afterward, M. PATEL sent a video of M. PATEL counting the proceeds to CHIKHALIYA.

f) On or about June 7, 2024, V. PATEL sent Victim 4's address in Petaluma, California, to M. PATEL, as well as Victim 4's name, the clothing Victim

4 was wearing, and a fabricated password of "Rocky." M. PATEL then sent Victim 4's information to Coconspirator 1.

g) On or about June 6, 2024, members of the scheme caused Victim 4 to provide $20,000 in cash to scheme participants while using the "Rocky" password as supposed verification.

h) On or about June 7, 2024, members of the scheme again caused Victim 4 to provide $20,000 in cash to scheme participants while using the "Rocky" password.

i) On or about June 10, 2024, M. PATEL sent Victim 5's address in Madison, Mississippi, to Coconspirator 1 and Coconspirator 2.

j) On or about June 10, 2024, members of the scheme caused Victim 5 to provide cash to purported security officers who arrived at Victim 5's home.

k) On or about June 11, 2024, M. PATEL sent CHIKHALIYA a screenshot depicting M. PATEL's distance to Victim 3's residence in Westland, Michigan.

l) On or about June 11, 2024, M. PATEL caused Victim 3 to provide cash to scheme participants in the parking lot of a restaurant on North Wayne Road in Westland.

m) Over the course of the month, members of the scheme caused Victim 3 to provide $232,800 to scheme participants.

n) On or about June 12, 2024, M. PATEL sent Victim 6's address in Thomasville, Georgia, to KETANKUMAR KANUBHAI PATEL

(hereinafter, "K. PATEL"). Later that same day, K. PATEL sent M. PATEL a photo of the outside of Victim 6's house.

o) On or about June 12, 2024, K. PATEL picked up $50,000 in cash from Victim 6 at his residence, after which K. PATEL sent M. PATEL a video of K. PATEL counting the proceeds.

p) On or about June 13, 2024, K. PATEL picked up another $50,000 in cash from Victim 6, after which K. PATEL sent M. PATEL a video of K. PATEL counting the proceeds.

q) On or about June 14, 2024, K. PATEL, directed by M. PATEL, transported proceeds to Coconspirator 3 at a Burger King in Lake City, Florida.

r) On or about June 13, 2024, M. PATEL sent Victim 7's address in Knoxville, Tennessee, to Coconspirator 4.

s) On or about June 13, 2024, Coconspirator 4, falsely acting as an FBI agent, picked up $17,000 in cash from Victim 7 and sent an image of $16,320 to M. PATEL.

t) On or about June 19, 2024, M. PATEL sent Victim 5's address in Madison, Mississippi, to K. PATEL, and K. PATEL responded with a photo depicting K. PATEL's distance from Victim 5.

u) On or about June 19, 2024, M. PATEL sent Victim 5's address in Madison, Mississippi, to Coconspirator 4.

v) On or about June 19, 2024, members of the scheme caused Victim 5 to provide cash to purported security officers who arrived at her home. Over

the course of the month, members of the scheme caused Victim 5 to provide $227,907 to scheme participants.

w) On or about June 20, 2024, M. PATEL sent Victim 8's address in Jacksonville, Florida, as well as Victim 8's name and "Amount- 25000," to K. PATEL and Coconspirator 2.

x) On or about June 20, 2024, members of the scheme caused Victim 8 to provide $25,000 in cash to scheme participants.

y) On or about June 21, 2024, V. PATEL sent Victim 9's address in Roanoke, Virginia, to M. PATEL, accompanied by the message, "Amount = 39400 Cash Ready."

z) On or about June 21, 2024, M. PATEL sent Victim 9's address to Coconspirator 5 and the message, "Cash ready."

aa) On or about June 21, 2024, members of the scheme caused Victim 9 to provide $39,400 in cash to scheme participants.

bb) On or about June 25, 2024, M. PATEL sent AMANKUMAR KUSHWAHA (hereinafter, "KUSHWAHA") Victim 10's address in Willoughby, Ohio, along with a message stating, "15k CP." Over the course of the month, members of the scheme caused Victim 10 to provide $91,000 in cash to scheme participants.

cc) On or about June 27, 2024, V. PATEL sent Victim 11's address in Miramar, Florida, to M. PATEL.

dd) On or about June 27, 2024, members of the scheme caused Victim 11 to provide $125,000 in gold to scheme participants acting as FBI agents.

ee) On or about June 28, 2024, V. PATEL sent Victim 12's address in Tonawanda, New York, to M. PATEL.

ff) On or about June 28, 2024, members of the scheme caused Victim 12 to provide $42,500 in cash to scheme participants.

gg) In or around June of 2024, V. PATEL directed Coconspirator 6 and Coconspirator 8 to drop off victim proceeds to M. PATEL at the Circle K convenience store M. PATEL managed in Sandusky, Ohio, as arranged by CHIKHALIYA.

hh) On another occasion in or around June of 2024, Coconspirator 6 dropped off victim proceeds to M. PATEL at the Sandusky Circle K convenience store.

ii) On another occasion in or around June of 2024, Coconspirator 6 dropped off victim proceeds to M. PATEL through an intermediary at a different convenience store, Cliff's Carryout, also located in Sandusky, Ohio.

jj) On or about July 6, 2024, M. PATEL sent Victim 13's address in Hernando, Florida, to K. PATEL.

kk) On or about July 10, 2024, M. PATEL sent Victim 14's address in East Canton, Ohio, to KUSHWAHA, accompanied by a message stating, "$19700."

ll) On or about July 10, 2024, KUSHWAHA sent M. PATEL photos indicating his distance to Victim 14.

mm) On or about July 10, 2024, KUSHWAHA picked up $19,700 from Victim 14 at Victim 14's residence in East Canton, Ohio. That same day,

KUSHWAHA sent M. PATEL a video of two JP Morgan Chase cash envelopes.

nn) On or about July 10, 2024, members of the scheme caused Victim 15 to provide $50,000 in cash to Coconspirator 6 and Coconspirator 7 at Victim 15's residence in Northville Township, Michigan.

oo) On or about July 11, 2024, members of the scheme caused Victim 16 to provide $30,000 in cash to Coconspirator 8 at Victim 16's residence in Marietta, Ohio.

pp) On or about June 1, 2025, M. PATEL received a text message containing Victim 17's address in Boynton Beach, Florida, accompanied by the message, "$45,000."

qq) Over the course of two months, members of the scheme caused Victim 17 to provide $149,000 to scheme participants who purported to be Federal Trade Commission agents.

All in violation of Title 18, United States Code, Section 1956(h).

<u>COUNTS 2-6</u>
(Concealment Money Laundering, 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2)

The Grand Jury further charges:

9. The factual allegations contained in paragraphs 1 through 8 of this Indictment are incorporated by reference as if stated fully herein.

10. On or about the dates listed below, in the Northern District of Ohio and elsewhere, the Defendants listed below did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, that is, the transactions described below, which involved the proceeds of a specified unlawful activity, that is, Wire Fraud in violation of

Title 18, United States Code, Sections 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, as follows:

| Count | Defendants | Date | Amount |
|---|---|---|---|
| 2 | MIT JITENDRAKUMAR PATEL<br>VRAJ BHARATBHAI PATEL | May 31, 2024 | $24,700 |
| 3 | M. PATEL<br>V. PATEL<br>MIGNESHBHAI LAVJIBHAI CHIKHALIYA | June 4, 2024 | $64,000 |
| 4 | M. PATEL<br>CHIKHALIYA | June 5, 2024 | $15,000 |
| 5 | M. PATEL<br>KETANKUMAR KANUBHAI PATEL | June 12, 2024 | $50,000 |
| 6 | M. PATEL<br>AMANKUMAR KUSHWAHA | July 10, 2024 | $19,700 |

All in violation of Title 18, United States, Sections 1956(a)(1)(B)(i) and 2.

COUNT 7
(Promotion Money Laundering, 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2)

The Grand Jury further charges:

11. The factual allegations contained in paragraphs 1 through 8 of this Indictment are incorporated by reference as if stated fully herein.

12. On or about June 14, 2024, in the Northern District of Ohio, the Middle District of Florida, and elsewhere, Defendants MIT JITENDRAKUMAR PATEL and KETANKUMAR KANUBHAI PATEL did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit: the transfer of United States currency, which involved the proceeds of a specified unlawful activity, that is, Wire Fraud in violation of Title 18, United States Code, Sections 1343, with the intent to promote the carrying on of the specified

unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States, Sections 1956(a)(1)(A)(i) and 2.

COUNTS 8-9
(Unlawful Alien in Possession of a Firearm,
18 U.S.C. §§ 922(g)(5)(A) and 924(a)(8))

The Grand Jury further charges:

13. On or about the dates listed below, in the Northern District of Ohio, Western Division, Defendant MIT JITENDRAKUMAR PATEL, knowing he was an alien illegally and unlawfully in the United States, knowingly possessed the below firearms, said firearms having been shipped and transported in interstate and foreign commerce:

| Count | Date | Firearm |
|---|---|---|
| 8 | September 15, 2023 | Glock 43X 9mm pistol |
| 9 | January 25, 2025 | Glock Gen 3 9mm pistol |

All in in violation of Title 18, United States Code, Sections 922(g)(5)(A) and 924(a)(8).

FORFEITURE SPECIFICATION

The Grand Jury further charges:

14. The allegations of Counts 1-9 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 924(d)(1) and 982(a)(1), and Title 28, United States Code, Section 2461(c). As a result of the foregoing offenses, Defendants MIT JITENDRAKUMAR PATEL, MIGNESHBHAI LAVJIBHAI CHIKHALIYA, AMANKUMAR KUSHWAHA, KETANKUMAR KANUBHAI PATEL, and VRAJ BHARATBHAI PATEL shall forfeit to the United States all property, real and personal, involved in the commission of the violations charged in Counts 1 through 7, and all property

traceable to such property; and all firearms and ammunition involved in or used in commission of the violations charged in Counts 8 and 9.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.